COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-04-441-CR

 

 

FREDERICK JEROME MILLER                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                            Introduction

Appellant Frederick Jerome
Miller appeals his conviction and life sentence for capital murder.  In three points, he argues that the evidence
is legally and factually insufficient and that the trial court erred by
overruling his motion to suppress a statement he made to police.  We affirm.








                                             Discussion

In his first and second
points, Appellant argues that the evidence is legally and factually
insufficient to support his conviction.

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact-finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id.  
     In performing a factual
sufficiency review, we are to give deference to the fact-finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact-finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).








The victim in this case was
Napoleon Lewis Jr.  Tarrant County Deputy
Medical Examiner Dr. Gary Sisler testified that Lewis was strangled to death
with a necktie.  Fort Worth Police Officer
Scott Cepak testified that he discovered the body in Lewis=s home while performing a Awelfare check@ in response
to a call from a concerned neighbor who had not seen Lewis in a couple of days
and had seen someone else driving Lewis=s car.  Fort Worth Police Crime
Scene Officer Pat Henz testified that Lewis=s body was fully dressed except for his shoes, which were next to the
body.  The house appeared to have been
ransacked. 

The next day, Fort Worth
Police Officer Kelly Caruthers stopped Lewis=s missing car after hearing a police broadcast concerning the car and
Lewis=s homicide.  Officer Caruthers
arrested the car=s passenger,
Willie Wilson, on a parole violation warrant. 

Wilson testified that he had
known Appellant for several years. 
Wilson said that, while he and Appellant were together using drugs one
night, Appellant told him that he thought he had Adid somebody in.@  Appellant allowed Wilson and others to pay
him money to use Lewis=s car over
the next several days.  Wilson was riding
in the car with an unnamed person when police stopped the car and arrested
him.  Wilson next saw Appellant when they
were both in jail.  Wilson testified that
Appellant told him that he had stolen property from Lewis=s house and pawned it. 








Fort Worth Police Detective
Michel Carroll testified that Wilson, after he was arrested while riding in
Lewis=s car, told Detective Carroll that he had obtained the car from
Appellant.  Detective Carroll eventually
interviewed Appellant multiple times.  In
his first interview, Appellant denied having known Lewis and claimed that
Wilson committed the crime.  In his
second interview, he admitted that he knew Lewis and had a physical
relationship with him and that he had taken property from Lewis=s house.  In a third interview,[2]
Appellant told Detective Carroll that he had gone to Lewis=s house with another man (not Wilson) and Lewis let them both in.  Appellant told Detective Carroll that he went
into another room while Lewis and the other man, whom Appellant did not know,
stayed in the bedroom.  Appellant said
that he found Lewis lying on the floor and the other man gone.  At that point, Appellant told Detective
Carroll, he started removing property from Lewis=s house and carried it off in Lewis=s car.  

Demarcus Johnson testified
that he met Appellant for the first time when they were both confined in the
Tarrant County Jail.  Johnson said that
Appellant consulted with him about DNA evidence from the crime scene. Johnson
testified that Appellant admitted to him that he had killed the victim by
strangling him with his tie.  According
to Johnson, Appellant told him that he had taken various property from Lewis=s house, including $800 from Lewis=s shoe, had taken Lewis=s car, and had returned to the house to remove more property.  








Detective Carroll testified
that there were no signs of forced entry into Lewis=s house, from which Detective Carroll concluded that the crime was
committed by someone who knew Lewis. 
Likewise, Dr. Sisler testified that Lewis had no defensive wounds on his
hands.  Detective Carroll=s investigation revealed no evidence that anyone other than Appellant
was in the house when Lewis was murdered. 

Gloria McDonald testified
that she and Lewis were coworkers and good friends.  About two weeks before his death, Lewis was
uncharacteristically upset and told McDonald that he intended to break off a
relationship with an unnamed person because he was tired of having to buy crack
cocaine for that person every night.  He
told McDonald that he knew that the person would be upset with him. 

Appellant called one witness,
Shirley Battles.  Battles testified that
she saw an unknown man, whose description did not match Appellant, standing on
Lewis=s front porch around the date of Lewis=s death.  Appellant argues that
Battles=s description points to Demarcus Johnson as the likely killer, but
nothing in the record ties Johnson to the relevant events except for his
jailhouse conversations with Appellant.








Considering all of the
evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could conclude beyond a reasonable doubt that Appellant
killed Lewis in the course of a robbery as charged in the indictment.  The evidence is therefore legally sufficient
to support the verdict.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789. 
Considering the evidence in a neutral light, we hold that it is also
factually sufficient.  See Zuniga,
144 S.W.3d at 481.  We therefore overrule
Appellant=s first two
points.

In his third point, Appellant
argues that the trial court erred by denying his motion to suppress his third
statement to Detective Carroll because the statement was taken in violation of
article 38.22 of the code of criminal procedure.  Specifically, Appellant contends that
Detective Carroll did not give Appellant the article 38.22 warnings in a manner
that Appellant could understand, that Appellant would not have given the
statement if he had known he could terminate the interview, and that Appellant
did not freely make the statement because his will was overborne.  We note that while Appellant cites authority
in support of his argument, his application of that authority to the facts of
this case is vague, conclusory, and wholly without explanation.








The trial court conducted a Jackson
v. Denno[3]
hearing to determine the admissibility of the tape recording of Appellant=s third statement to Detective Carroll.  At a Jackson v. Denno hearing, the
trial court is the sole fact-finder and may choose to believe or disbelieve any
or all of the witnesses=
testimony.  Jackson, 378 U.S. at
276-77, 84 S. Ct. at 1780-81; Dewberry v. State, 4 S.W.3d 735, 747 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We will not disturb the trial court=s findings absent an abuse of discretion.  Alvarado v. State, 912 S.W.2d 199, 211
(Tex. Crim. App. 1995).  An abuse of
discretion will be found only when the trial judge=s decision was so clearly wrong as to lie outside that zone within
which reasonable persons might disagree. 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)
(op. on reh=g).

The statement of an accused
may be used in evidence if it was freely and voluntarily made without
compulsion or persuasion.  Tex. Code Crim. Proc. Ann. art. 38.21
(Vernon 2005).  A confession is
involuntary if circumstances show that the defendant=s will was Aoverborne@ by police coercion.  Creager
v. State, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  In other words, a statement is involuntary if
the record reflects Aofficial,
coercive conduct of such a nature@ that any statement obtained thereby is Aunlikely to have been the product of an essentially free and
unconstrained choice by its maker.@  Alvarado, 912 S.W.2d at
211.  The determination of whether a
confession is voluntary is based on an examination of the totality of the
circumstances surrounding its acquisition. 
Reed v. State, 59 S.W.3d 278, 281 (Tex. App.CFort Worth 2001, pet. ref=d).








Article 38.22, section 2(b)
of the Texas Code of Criminal Procedure provides that no statement given by an
accused as a result of custodial interrogation is admissible unless the accused
Aprior to and during the making of the statement, knowingly,
intelligently, and voluntarily waived@ the warning prescribed by subsection 2(a).  Tex.
Code Crim. Proc. Ann. art. 38.22, ' 2(b) (Vernon 2005).

Detective Carroll testified
that he gave Appellant the Miranda and article 38.22 warnings before he
made his third statement.  State=s exhibit 27 is a typewritten copy of the both the Miranda and
article 38.22 warnings.  It bears
Appellant=s initials
in twelve places and his signature in two places, along with the dates of his
first and third statements to Detective Carroll.  At the beginning of Appellant=s third statement, Detective Carroll went over warnings one by one,
and Appellant stated that he understood each warning.  Detective Carroll asked, AAny statement you make may be used as evidence against you in court,
do you understand that one?@; Appellant answered, AYes, sir.@  He also stated that he had initialed the
written warnings.  Detective Carroll
testified that he did not coerce, threaten, or harm Appellant or promise him
anything in return for his statements. 
The trial court made findings of fact and conclusions of law on the
record that Appellant received the article 38.22 warnings and that he gave his
statement freely and voluntarily. 








Nothing in the record
supports Appellant=s arguments
that the warnings were given in a manner that he could not understand, that he
did not know he could terminate the interview, that he would not have given the
statement had he known that he could terminate the interview, and that his free
will was somehow overborne.  We therefore
hold that the trial court did not abuse its discretion by denying Appellant=s motion to suppress his third statement, and we overrule Appellant=s third point.

                                             Conclusion

Having overruled all of
Appellant=s points, we
affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL F:    HOLMAN, GARDNER, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  May 4, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
third interview, a tape recording of which was played for the jury, forms the
basis of Appellant=s
third point on appeal.





[3]378
U.S. 368, 84 S. Ct. 1774 (1964).